UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JASON R. MAYO, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 5:22-cv-73-CHB-CJS |
| v. | ) |
| SHELLY VOTAW CONYERS, et al., | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants' Motion for Summary Judgment (R. 28). This case has been referred to the undersigned to conduct all pretrial proceedings, including preparing proposed findings of fact and conclusions of law on any dispositive motions (*see* R. 22). Plaintiff has not filed a response to Defendants' Motion and the time to do so has long since expired. For the reasons set forth below, it will be recommended that Plaintiff's claims against Defendants **be dismissed**, and this action **be stricken** from the active docket of this Court.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On June 30, 2021, Plaintiff Jason Mayo, an inmate at Northpoint Training Center ("NTC"), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 in the Western District of Kentucky, alleging medical staff at several different prisons provided insufficient medical care for injuries to his hand following an altercation in mid-2020. *See Mayo v. Ky. Dep't of Corr., et al.*, No. 3:21-CV-424-DJH (W.D. Ky.), ECF No. 1. After conducting an initial screening of the Complaint pursuant to 28 U.S.C. § 1915A, the presiding District Judge in the Western District dismissed several of Mayo's claims and permitted him to file an amended complaint. *See id.*, ECF No. 8. On January 31, 2022, Mayo filed an Amended Complaint, naming as defendants "Shelly Botaw, Nurse Practitioner" and "Angela Clifford, M.D.," two medical providers at NTC, along

with "Katherine Smith, Nurse Practitioner" and "Katherine Williams, FNP-C," two medical providers at the Luther Luckett Correctional Complex ("LLCC"). *See id.*, ECF No. 13. Katherine Williams was formerly known as Katherine Smith, *see id.*, ECF No. 29; thus, these two medical provider defendants were in fact the same person and Defendant Katherine Smith was terminated from the case as duplicative, *see id.*, ECF No. 40. The claims against Shelly Conyers and Angela Clifford were severed and a new civil case related to those severed claims was opened, with the new action transferred to this District in March 2022 based on venue. *See id.*, ECF No. 14. The claims against Defendant Katherine Williams were eventually dismissed by the Western District upon granting her Motion for Summary Judgment on August 1, 2023. *See id.*, ECF Nos. 50, 51.

In the instant action transferred to this Court in March 2022, Mayo alleges that Defendants Conyers and Clifford were deliberately indifferent to his serious medical needs when they failed to follow the doctor's post-operative orders for physical therapy and failed to provide further medical treatment for his finger. (*See* R. 1). Mayo informs that after his March 11, 2021, hand surgery, Dr. Tuna Ozyurekoglu ordered he "start gentle passive rehab and active extensive exercises." (*Id.* at Page ID 4-5). Mayo claims that on March 21, 2021, Defendants "gave [him] a piece of paper that [he] did not understand." (*Id.* at Page ID 6). According to Mayo, "It [presumably the paper] was supposed to be some exercise that [he] was to perform on [his] hand, which [he] had no knowledge of how to perform." (*Id.*). Mayo also claims that Defendants failed to see him for approximately nine months, from March 21, 2021 to December 9, 2021. (*See id.*). Mayo states he submitted two "sick call healthcare requests" concerning pain in his left hand/finger on December 14 and December 20, respectively. Mayo alleges that he met with Defendant Conyers on December 21 and showed her his infected hand, but she did not clean his wound. (*See id.*).

Upon transfer to this District in March 2022, the Clerk of Court entered its standard notice to pro se filers, informing Mayo that, among other things, if his mailing address changed, he "must

2

**immediately** file a written Notice of Change of Address form" with the Court and that failure to do so could result in the Court dismissing his case. (R. 6) (both emphasis in original). Because the action was transferred to this District, Mayo had not paid the requisite fee for filing a § 1983 action in this District; thus, the presiding District Judge directed Mayo to either pay the filing fee or apply to proceed in forma pauperis. (*See* R. 7). Mayo subsequently filed a Motion to Proceed In Forma Pauperis (R. 8), along with a copy of his Prisoner Trust Fund Account (R. 9). Mayo also filed a letter (R. 10), alleging that any future failure to file the necessary pleadings is not on him, but instead an attempt by prison staff members to keep him from raising colorable claims. Pursuant to 28 U.S.C. § 1915(b), the Court granted Mayo pauper status, waived administrative fees, and set a schedule to deduct from Mayo's inmate account for the remainder of the filing fees. (*See* R. 11).

On April 28, 2022, Mayo filed a Motion to Supplement his Complaint (R. 12) in order to reflect the correct name of the Defendant he identified as "Shelly Botaw" to that of "Shelli Votaw Conyers."[1] Mayo's Motion was granted, Defendant Conyers's name was corrected, and the United States Marshal Service ("USMS") was ordered to serve summons on each Defendant. (*See* R. 14). Summonses were issued by the Clerk (*see* R. 15) and returned executed via the USMS, with Defendants being served on September 8, 2022 (*see* R. 16; R. 17). Thus, Defendants' Answers were due on or before September 29, 2022. *See* Fed. R. Civ. P. 12(a)(1)(A). Seeing no Answer filed by that date, the Court ordered Defendants show cause as to why default judgment should not be entered against them. (*See* R. 18). Defendants then filed an Answer (R. 20) and a Response to the show cause Order (R. 21). Having found good cause shown, the presiding District Judge discharged the show cause Order and referred the matter to the undersigned to conduct all pretrial

---

[1] Review of Defendants' filings (*see* R. 20 (Answer); R. 21 (Response to Show Cause Order); R. 27 (Motion for Leave to Seal); R. 28 (Motion for Summary Judgment); and R. 31 (Notice of Filing)) indicates the proper spelling of Defendant's name is "**Shelly** Votaw Conyers"; thus, the Court will continue to caption its Orders using that spelling. (*See, e.g.*, R. 14; R. 18; R. 22; R. 23; R. 26; R. 29; R. 30).

proceedings, including preparing proposed findings of fact and conclusions of law on any dispositive motions. (R. 22).

On November 7, 2022, the Court entered a Scheduling Order (R. 23), providing deadlines for the completion of pretrial discovery by April 7, 2023, and the filing of dispositive motions by May 5, 2023, with responses and replies due as required under Joint Local Rule 7.1. In addition, the parties were notified that any request to modify the deadlines in the Scheduling Order must be made by motion, filed prior to the expiration of the pertinent deadline, and show good cause for the modification. (*See id.*). On November 15, 2022, Mayo filed a Motion for Appointment of Counsel. (R. 24). Because Mayo had failed to demonstrate the necessary showing at that time, his Motion was denied without prejudice. (*See* R. 26). On January 13, 2023, Mayo sent a letter to the Clerk of Court requesting a copy of the docket sheet. (*See* R. 25). The Clerk docketed the letter and mailed a copy of the docket sheet to Mayo. (*See id.*).

On May 5, 2023, Defendants filed a Motion for Summary Judgment (R. 28), arguing they are entitled to summary judgment because Mayo failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act and because there is no genuine issue of material fact that either Defendant acted with deliberate indifference to Mayo's serious medical needs. Mayo failed to file a response to the Motion for Summary Judgment. Rather than speculate as to whether Mayo had abandoned his case, the Court ordered Mayo to file, by July 13, 2023: (1) a response to Defendants' Motion for Summary Judgment and (2) a notice filing stating whether he intended to prosecute his case. (*See* R. 29). Mayo was directly informed that his failure to file a response to Defendants' Motion may be grounds for granting the motion and that his failure to make a notice filing identifying whether he intended to continue with this case may be grounds for dismissing the action for failure to prosecute. (*See id.*). As of the date of this Report and Recommendation, nothing further has been filed by Mayo since the Clerk's January 13, 2023,

4

receipt of his letter requesting a copy of the docket sheet. (*See* R. 25). According to the Kentucky Online Offender Lookup ("KOOL") website, Mayo remains incarcerated at NTC. *See* Kentucky Department of Corrections Online Offender Lookup ("KOOL"), *available at* http://kool.corrections.ky.gov/KOOL/Details/275722 (last visited February 12, 2024).

## II.  ANALYSIS

### A.  Defendants' Motion for Summary Judgment

#### 1.  Standard of Review

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. That Rule provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, once the moving party has met its burden, the burden shifts to the nonmoving party to present specific facts showing there is a genuine issue of material fact. *Arendale v. City of Memphis*, 519 F.3d 587, 593-94 (6th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).[2]

---

[2]  As pointed out previously, Mayo did not file a response to Defendants' Motion for Summary Judgment. The Sixth Circuit has held that when a plaintiff fails to respond to a motion, the district court may deem the plaintiff to have waived any opposition to the motion. *See Scott v. State of Tenn.*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (table decision) ("if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."); *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived"). Local Rule 7.1(c) also provides that "[f]ailure to timely respond to a motion may be grounds for granting the motion." By failing to file a response to Defendants' pending Motion, Mayo has waived any opposition he might have to the Motion.

However, the Sixth Circuit has also held that where the granting of a motion will result in the dismissal of an action, the Court should exercise some caution to at least ensure the moving party has met its burden. *See Carver v. Bunch*, 946 F.2d 451, 453-54 (6th Cir. 1991) (noting that "a party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue of material fact," and "must always bear this initial burden regardless if an adverse party fails to respond"). Thus, dismissal of Mayo's claims against Defendants is not being recommended based solely on Mayo's failure to file a response to Defendants' Motion for Summary Judgment.

5

When ruling on motions for summary judgment, courts accept the nonmovant's evidence as true and draw all reasonable inferences in favor of the nonmovant. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Summary judgment will not be granted if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, to survive summary judgment, the nonmoving party cannot rely on "conjecture or conclusory accusations" but "must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale*, 519 F.3d at 605 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Conclusory assertions that are supported only by the asserter's own opinions cannot withstand a motion for summary judgment. *Id.*

### 2.     Deliberate Indifference to Serious Medical Needs [3]

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotations and citation omitted). This proscription extends to indifference "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. To prove this type of claim under 42 U.S.C. § 1983, a plaintiff must show that each defendant acted under color of state law and that each defendant individually was deliberately indifferent to the prisoner's serious medical needs.

---

[3] Because the undersigned recommends granting summary judgment for Defendants based on the merits and dismissing Mayo's claims based on his failure to prosecute, the undersigned will not address whether Mayo failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act.

*West v. Atkins*, 487 U.S. 42, 48-49 (1988). The parties here do not dispute that Defendants were acting under color of state law in their interactions with Mayo. Indeed, courts have held that parties contracting with a state to provide services to inmates can be considered state actors for purposes of a § 1983 suit. *West*, 487 U.S. at 44; *Carl v. Muskegon Cnty.*, 763 F.3d 592, 596 (6th Cir. 2014). Thus, the remaining question is whether Defendants were deliberately indifferent to Mayo's serious medical needs.

A deliberate indifference claim has two components, one objective, the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021). The objective component requires a plaintiff to demonstrate that his deprivation was "sufficiently serious." *Farmer*, 511 U.S. at 834. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). A serious medical need alone can establish the objective prong if doctors effectively provide no care for it. *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). "But when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005)). A desire for additional or different treatment does not usually support an Eighth Amendment claim, especially when a plaintiff fails to provide expert medical testimony (either through affidavits or depositions) that shows the medical necessity for such treatment. *Mitchell v. Hiniger*, 553 F. App'x 602, 605 (6th Cir. 2014); *Anthony v. Swanson*, 701 F. App'x 460, 463-64 (6th Cir. 2017). The Sixth Circuit has regularly rejected Eighth Amendment claims based on adequacy of treatment when the plaintiff has failed to present expert medical evidence that the

7

treatment was inadequate. *Phillips*, 14 F.4th at 535; *Rhinehart*, 894 F.3d at 740; *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013); *Blosser v. Gilbert*, 422 F. App'x 453, 461 (6th Cir. 2011). *See also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) ("federal courts are generally reluctant to second guess medical judgments").

The subjective component requires a plaintiff to demonstrate that the defendant had a "sufficiently culpable state of mind" in denying medical care. *Farmer*, 511 U.S. at 834. A plaintiff's disagreement with a course of treatment does not indicate that an official subjectively disregarded a serious medical need. *Phillips*, 14 F.4th at 535. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." *Rhinehart*, 894 F.3d at 738 (quoting *Santiago*, 734 F.3d at 591). A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or harmful. *Farmer*, 511 U.S. at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk."). Instead, a plaintiff "must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Perez v. Oakland Cnty.*, 466 F.3d 423, 424 (6th Cir. 2006) (quoting *Comstock v. McCrary*, 273 F.2d 693, 702 (6th Cir. 2001)). "[T]he subjective intentions of prison authorities must be demonstrated by *objective manifestations* of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners and their representatives." *Stevens v. Gooch*, 615 F. App'x 355, 360 (6th Cir. 2015) (emphasis added) (quoting *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991)).

In their Motion for Summary Judgment, Defendants provide the following summary of Mayo's medical records:

8

1. Mayo was transferred to NTC on March 3, 2021. [R. 28-6] at 2.

2. Mayo had offsite surgery outside of the facility on March 11, 2021. *Id*. at 10.

3. Mayo had a post op follow up treatment offsite on March 30, 2021. Note states, "Noted to be doing well. Orthopedic dorsal brace for 1 more month. Recommended PT in 1 month for ROM." *Id*. at 15.

4. As recommended, one month later, on April 26, 2021, Mayo had a telehealth physical therapy consult. It was noted that Plaintiff has poor knowledge of techniques to improve range of motion and limit contractures. A daily HEP (home exercise program) was recommended for Plaintiff. *Id*. at 20.

5. On May 25, 2021, Plaintiff had another telehealth physical therapy consult. The note states, "Patient states he did the exercises…that the PT showed him and just this past week he got a bad cramp into his hand that made it lock up, he said the pain was horrible and he stopped. Patient states the pain did not happen before." Patient was recommended to continue the home exercise plan and was educated on performance of self-massage in order to assist in decreased pain. "Patient expressed understanding of recommendation." *Id*. at 25.

6. On May 27, 2021, Plaintiff was discharged from physical therapy with recommendation for PT at a later date after surgical follow up. "Patient's exercises were reviewed with him yesterday and he was independent and no new exercises were issued." *Id*. at 31.

7. On June 25, 2021, Plaintiff presented to sick-call complaining of intermittent numbness/tingling in his left hand/forearm. The notes states that he was last seen by a surgeon in May, where delayed healing was noted. He was instructed to continue to wear splint. He had an x-ray on June 22, 2021; no acute osseous abnormality noted. *Id*. at 36.

8. He had a mental health visit on July 21, 2021, in which he complained of chronic pain. He had an active prescription for Extra Strength Tylenol twice daily as needed. *Id*. at 41, 46.

9. Plaintiff had a follow up appointment with his hand surgeon on July 27, 2021. The x-ray shows healing. A CT scan was recommended. *Id*. at 50.

10. Plaintiff had a CT scan of his right hand on September 22, 2021. *Id*. at 56.

11. On October 26, 2021, Plaintiff had an offsite visit to be assessed for surgery. *Id*. at 61, 63.

12. On October 28, 2021, Defendant Conyers notes that the orthopedic surgeon recommended surgery for the removal of the hardware from previous surgeries. *Id*. at 66.

13. On [November 30, 2021], Plaintiff had a pre-operative appointment at Jewish Hospital in Louisville. *Id*. at 71.

14. On December 9, 2021, Plaintiff returned from surgery. *Id*. at 76.

15. Between December 11 and December 14, 2021, nurse visits noted no complaints. *Id*. at 81, 86, 91, 96.

16. On December 15, 2021, Plaintiff visited sick call complaining of pain. He was prescribed ibuprofen twice daily. *Id*. at 101, 103.

17. Defendant Conyers treated Plaintiff on December 22, 2021. She removed his dressing for inspection of the surgical site and dressed the site. *Id*. at 106-107, 109.

Plaintiff has continued to receive extensive treatment for his finger after he signed the Amended Complaint on December 27, 2021. For example:

18. A note dated December 28, 2021, states that Plaintiff possibly refractured his finger after slipping and catching himself with his hand. "Patient refuses to go to the ER. Finger redressed and patient released form medical in stable condition." *Id*. at 111.

19. Plaintiff had a telehealth PT consult on February 22, 2022. *Id*. at 116-117.

20. He had another telehealth PT consult on March 8, 2022, where he reports "being able to perform current issues home exercise program with minimal improvement." He was provided education for desensitization techniques with use of grasp/release techniques and pinching objects while hand is in a container of rice. Also advised on additional exercises. *Id*. at 122.

21. Plaintiff received additional on and off-site care and treatment for his finger on April 22, April 27 (physical therapy), May 2, May 11, June 28, July 8, July 11, July 13, July 20, July 26, July 29, September 13, September 19, and September 21, 2022. *Id*. at 127, 129, 132- 133, 138, 143, 148-150, 153, 158, 164, 169, 178, 183, 188-190, 193, 199.

(R. 28 at Page ID 76-78). Defendants argue the medical records demonstrate that medical staff treated or attempted to treat Mayo's broken finger throughout the time period at issue. (*See id*. at Page ID 83). Defendants further argue that Mayo's claim fails because he has not produced verified medical evidence to establish any harm purportedly caused by Defendants. (*See id*. at Page ID 83-85). Finally, Defendants argue Mayo's claim fails because no reasonable jury could

10

conclude that the subjective component of a deliberate indifference claim is satisfied. (*See id*. at Page ID 86).

As outlined above, Mayo received ongoing treatment for the injury to his finger; therefore, to meet the objective component, he must demonstrate that his treatment was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 604-05 (quoting *Alspaugh*, 643 F.3d at 169). As a general matter, the provided medical records demonstrate that since he was transferred to NTC, Mayo received treatment for the injury to his finger, including x-rays, multiple surgeries, physical therapy, and other follow-up care. (*See* R. 28-6). Mayo claims that Defendants failed to conduct the post-op physical therapy ordered by the doctor. But the medical records indicate Mayo did in fact receive instructions on physical therapy for his hand. Following his surgery on March 11, 2021, Mayo had physical therapy evaluations on April 26, 2021 and May 25, 2021. (*See id*. at Page ID 783, 788). At the April 26 evaluation, the physical therapist acknowledged Mayo's "poor knowledge of appropriate techniques" and provided specific instruction and education on a home exercise program. (*See id*. at Page ID 783). At the May 25 evaluation, Mayo reported that he had been able to conduct the exercises but in the preceding week had experienced a bad cramp, causing him to stop; thus, the physical therapist instructed him on self-massage techniques to reduce pain. (*See id*. at Page ID 788). After his surgery on December 9, 2021, Mayo had physical therapy evaluations on February 22, 2022, March 8, 2022, and April 27, 2022. (*See id*. at Page ID 879, 885, 895). At each of these evaluations, the physical therapist reiterated the instructions on the home exercise program and provided additional techniques to decrease numbness and pain. (*See id*.). Thus, the medical records belie Mayo's claim that he did not receive post-operative physical therapy as ordered by the doctor.

11

Next, Mayo claims that Defendants did not see him for a period of approximately nine months, from March 21, 2021 to December 9, 2021. This claim, like the preceding claim, is also belied by the medical records. Although not in-person, Defendant Conyers conducted "Chart Review[s]" of Mayo's circumstances on March 30, 2021, August 6, 2021, and October 28, 2021. (*See id*. at Page ID 778, 813, 829). Most notably, Mayo actually met with Defendant Conyers on June 25, 2021, where she conducted a brief physical exam, prescribed extra strength Tylenol, and ordered a follow-up with the orthopedist in July. (*See id*. at Page ID 799-803). As for Defendant Clifford, she is not mentioned in the medical records provided; thus, it appears Mayo never dealt with Clifford in any capacity.

Even if Defendants had not seen Mayo for those nine months, Mayo nonetheless still received treatment for his hand. Indeed, Mayo's primary concern was the post-operative physical therapy ordered by the doctor, and as previously noted, the medical records demonstrate that he had several meetings with the physical therapist after his surgeries. (*See id*. at Page ID 783, 788, 879, 885, 895). While it may not have been Mayo's preferred course of treatment, the treatment was at least adequate for purposes of an Eighth Amendment claim, and certainly did not amount to "no treatment at all." *Mitchell*, 553 F. App'x at 604-05. Moreover, Mayo has not provided any expert medical evidence that any delay in receiving physical therapy or additional treatment was inadequate or led to serious harm as required for an Eighth Amendment violation. The Sixth Circuit requires that an inmate "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cnty., Ky.*, 238 F. 3d 739, 742 (6th Cir. 2001) (citations omitted). Mayo's failure to provide verified medical evidence is fatal to his deliberate indifference claim. *See, e.g.*, *Rhinehart*, 894 F.3d at 742 (quoting *Santiago*, 734 F.3d at 591) ("even though an inmate showed that he had a serious skin condition

12

and that his prison doctors failed to prescribe him the treatment that a specialist had recommended, he could not proceed past summary judgment . . . because he produced no 'medical proof' showing that the medications his prison doctors prescribed were inadequate.").

Finally, Mayo alleged in his Complaint that Defendant Conyers failed to respond to his sick call requests on December 14 and December 20 concerning pain and failed to clean his wound on December 21. Like the previous claims, this claim is also contradicted by the medical records. The nurse visits from December 11 to December 14 note that Mayo displayed no distress and had no complaints. (*See* R. 28-6 at Page ID 844, 849, 854, 859). On December 15, 2021, Mayo visited sick call complaining of pain and was prescribed ibuprofen twice daily and recommended to follow up with his provider. (*See id*. at Page ID 864-867). Mayo followed-up with Defendant Conyers as recommended on December 22. (*See id*. Page ID 869). Defendant Conyers removed the dressing around Mayo's finger, inspected the surgical site, and re-dressed the wound. (*See id*. at Page ID 869-70). As noted previously, while this may not have been Mayo's preferred course of treatment, he did not respond to the summary judgment motion or otherwise provide evidence to suggest that the treatment was so grossly inadequate as to amount to no treatment at all. *Mitchell*, 553 F. App'x at 604-05; *Rhinehart*, 894 F.3d at 742.

Furthermore, assuming *arguendo* that Mayo could demonstrate the objective component of his claim,[4] a reasonable jury could not conclude that Defendants were deliberately indifferent to his claimed serious medical need. Mayo has not produced any evidence showing that Defendants subjectively perceived facts from which to infer substantial risk to Mayo, did in fact draw the inference, and then disregarded that risk. *Perez*, 466 F.3d at 424. Instead, as noted

---

[4] If a plaintiff cannot prove the objective element of deliberate indifference, the court does not need to engage in an analysis of whether a defendant's conduct meets the subjective component of deliberate indifference. *Phillips*, 14 F.4th at 535 ("Only if a prisoner proves this objective element must courts consider the second (subjective) part of the deliberate indifference test.").

13

previously, the medical records demonstrate that Defendants responded to Mayo's medical needs reasonably. *Farmer*, 511 U.S. at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk."). In short, Mayo received constitutionally adequate care, has not produced any expert medical evidence to support his assertions, and cannot prove that Defendants acted with deliberate indifference to his serious medical needs. Thus, Defendants are entitled to summary judgment on this basis.

### B. Failure to Prosecute

A federal trial court has authority to dismiss a case under Federal Civil Rule 41(b) because of a plaintiff's failure to prosecute his claims. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629-31 (1962) (holding the language in Rule 41(b) allowing for a party to move to dismiss for failure to prosecute did not implicitly abrogate the court's power to dismiss *sua sponte*).[5] "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.*; *see also Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) ("It is well settled that a district court has the authority to dismiss sua sponte a lawsuit for failure to prosecute."); *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993) ("Under the Federal Rules of Civil Procedure, Rule 41(b), the district court has the authority to dismiss a case for failure to prosecute."); *see Palasty v. Hawk,* 15 F. App'x 197, 199 (6th Cir. 2001) (citing *Knoll v. American Telephone & Telegraph Co.,* 176 F.3d 359, 363 (6th Cir. 1999)) (noting that dismissal of claims for failure to prosecute was available to the district

---

[5] Rule 41(b) provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits."

14

court as a tool to manage its docket and to avoid unnecessary burdens on the court and opposing parties, after certain plaintiffs failed to respond to a court order requiring filing status information).

In determining whether a case should be dismissed for failure to prosecute under Federal Rule 41(b), a court should consider the following four factors:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Rogers v. City of Warren,* 302 F. App'x 371, 376 (6th Cir. 2008) (quoting *Mulbah v. Detroit Bd. of Educ.,* 261 F.3d 586, 589 (6th Cir. 2001)); *Knoll,* 176 F.3d at 363. As discussed below, a review of these factors leads to the conclusion that dismissal is appropriate in this case.

First, the Court does not know specifically why Mayo failed to file a response to Defendants' Motion for Summary Judgment, to make a notice filing responsive to the Court's Order, or to otherwise move this case forward, but it appears Mayo has abandoned his case. Mayo's allegation that the prison staff might prevent him from timely mailing his paperwork is belied by the record. Throughout this case, Mayo has made several filings without issue. (*See, e.g.*, R. 8 (Motion to Proceed In Forma Pauperis); R. 9 (Letter addressing timeliness of filings); R. 12 (Motion to Supplement Complaint); R. 24 (Motion to Appoint Counsel); R. 25 (Letter requesting copy of docket sheet)). Indeed, Mayo has made several filings in his case in the Western District. *See Mayo v. Ky. Dep't Corr., et al.*, No. 3:21-cv-00424-JHM (W.D. Ky.). Most notably, Mayo sent a letter requesting a copy of the docket sheet to both this District and the Western District and both Clerks docketed the letter on January 13, 2023. (*See* R. 25); *see Mayo*, No. 3:21-cv-00424-JHM (W.D. Ky.), ECF No. 38. That letter was the last filing Mayo made in his case with this District, despite the Court's Order for further correspondence. (*See* R. 29). In the Western District, however, Mayo continued to make filings after requesting a copy of the docket

sheet, including: on February 23, 2023, a letter asking for the deadline to respond to the defendants' motion for summary judgment; on May 19, 2023, a motion for extension of time to complete discovery and a motion to hold the defendants' motion for summary judgment in abeyance; and on June 5, 2023, a response to the defendants' motion for summary judgment. *See Mayo*, No. 3:21-cv-00424-JHM (W.D. Ky.), ECF Nos. 39, 43, 44, and 47. Mayo's failure to take the same measures in this District as he did in the Western District constitutes a conscious abandonment of the action before this Court.

Second, while the prejudice to Defendants at this point may be minimal, they have expended time and funds in defending this action, including preparation and filing of a dispositive motion. *See White v. Bouchard*, No. 05-73718, 2008 WL 2216281, at *5 (E.D. Mich. May 27, 2008) ("[D]efendants cannot be expected to defend an action which plaintiff has apparently abandoned, not to mention the investment of time and resources to defend this case."). In addition, Mayo's inaction has resulted in an overall delay of the litigation. Thus, Mayo's failure to move this case forward by filing a response to Defendants' dispositive motion or by filing a notice responsive to this Court's Order, or by making any other filing to advance the case has caused prejudice to Defendants.

Third, Mayo has been given clear warnings that his case could be dismissed if he did not comply with the Court's directive to "make a notice filing stating whether he intends to continue to prosecute this case against the Defendants." (R. 29 at page ID 351). Indeed, Mayo was warned that "failure to come forth and make the required notice filing stating that he intends to litigate this case may result in the dismissal of this action without prejudice for failure to prosecute." (*Id.*). And Mayo was obliged to make the notice filing "even if Mayo decides not to file a response to Defendants' Motion for Summary Judgment." (*Id.*). Despite this admonishment to Mayo about participating in his case, nothing more has been received from him. The Sixth Circuit has stated

16

that a party's failure to act in the face of a prior warning from the court that the case would be dismissed is a powerful indication of willful noncompliance. *See Lovejoy v. Owens*, 19 F.3d 1433, No. 92-4207, 1994 WL 91814, at *2 (6th Cir. Mar. 21, 1994) (table decision) (citing *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988)).

Lastly, less drastic sanctions were considered prior to dismissal. Mayo was ordered to take necessary action concerning his intent to prosecute this matter and notified that his failure to do so could be grounds to dismiss the action. Mayo failed to respond to the Court's Order, failed to request any extension of time, failed to file a response to Defendant's Motion for Summary Judgment, and failed to otherwise indicate that he has not abandoned his claims. All the while, Mayo continued to make timely filings in his companion case in the Western District of Kentucky. Under the totality of the circumstances, Mayo's inaction indicates that his failure to prosecute this case is either a willful decision on his part or in reckless disregard for the effect that his conduct has upon his case; thus, dismissal is warranted. *See Link,* 370 U.S. at 629-30 ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."). Furthermore, the objection period to this Report and Recommendation will serve as further advance notice to Mayo and provide him a final opportunity to respond prior to dismissal. *See Carver*, 946 F.2d at 454.

### III.    CONCLUSION AND RECOMMENDATION

As explained above, Defendants Conyers and Clifford have shown there is no genuine dispute as to any material fact regarding Mayo's claim of deliberate indifference. By not responding, Mayo has failed to show there are material facts in dispute that would allow a jury to return a verdict in his favor. Therefore, Defendants are entitled to summary judgment as a matter of law. In addition, Mayo has failed to make a notice filing as ordered and to prosecute his claims

in this civil action despite being warned they may be dismissed if he failed to do so. Therefore, dismissal of his case is also warranted on this basis.

Accordingly, **IT IS RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment (R. 28) **be granted**, and the claims against Defendants Shelly Votaw Conyers, Nurse Practitioner, and Angela Clifford, M.D., **be dismissed with prejudice.**

2. In addition, or in the alternative, the claims against Defendants **be dismissed** for failure to prosecute.

3. This action **be stricken** from the Court's active docket.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *see United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard,* 932 F.2d at 509. A party may respond to another party's objections within fourteen (14) days after being served with a copy of those objections. Fed. R. Civ. P. 72(b).

Signed this 13th day of February, 2024.



Signed By:
Candace J. Smith
United States Magistrate Judge

J:\DATA\Orders\civil lexington\2022\22-73-CHB R&R to grant MSJ & dismiss.docx